Next case is Rapid Completions v. Baker Hughes, 2019, 1240-1241, Mr. Qureshi. May it please the Court. Your Honors, as a preliminary matter, I just wanted to note that Claims 23 and 27 of the 505 patent and Claim 25 of the 634 patent are no longer at issue in view of this Court's decision in the Rapid Completions v. Weatherford case a few months ago. And so what that means is all of the claims relating to an open-hole methodology, restricted to an open-hole methodology, are out of the case now. Yes, the claims that relate to open-hole that were at issue at the patent office. Okay. And so your secondary consideration evidence was directed to those very claims, the open-hole claims. That's correct, Your Honor. So, therefore, I just want to make clear that we don't need to address the secondary consideration arguments anymore in this appeal, that they were directed to claims that have now fallen out of the case. That's correct, Your Honor. Okay. I will not be addressing secondary considerations with respect to those claims. Speaking of issues, counsel, your brief starts out by saying there are 17 issues. Do you have to win on all 17 issues? No, Your Honor. I think we can win on... Then why did you raise 17 issues to elude what issues might be more important and put the court to the effort of reviewing issues that don't matter? Well, some of those issues were direct to the secondary considerations aspect of the case on the open-hole claims, which have fallen away. We didn't know at the time we submitted our opening briefs that the court would decide the way it did in the Weatherford case. A number of those issues were related to the secondary considerations issues. As far as what it will take to win Your Honor's reversal of the PTAP decision in this case, I think it can be boiled down to three issues. One is whether Thompson anticipates the remaining claims of the 505 and 634 patents. The second issue is whether Thompson plus Brown renders obvious the remaining claims. The third is whether the Lane-Wells reference plus the Ellsworth reference renders obvious the remaining claims. Let me start... I'll try to hit all three of those. Let me start with the Thompson anticipation issue. As Your Honors are aware, the asserted claims or the challenge claims of these patents all require an alternating arrangement of packers and ports where each of the packers have in one patent multiple packing elements and in the 634 patent at least two packing elements. The Thompson reference, which was published in 1997, does not at all speak to packing elements on packers. It does not specifically disclose the arrangement of three packers and two ports that is specifically recited in the claims that are remaining in the two patents. What Baker-Hughes points to is figure four of the Thompson reference as purportedly showing a packer that has multiple packing elements. And they annotate... Figure three too, right? And figure three. And I'll... Figure three makes it pretty clear, doesn't it? More clear than figure four. I would agree that figure three is clearer than figure four, but our position... Vertical lines. Why was it unreasonable for the board to conclude that the retrievable packer there, as illustrated in figure three, is made up of multiple packing elements? We don't dispute that this single packer shown in figure three looks like it has multiple... The retrievable packer shown in the schematic in figure three does have multiple packing elements, but the claims require three packers each with multiple packing elements. And the Thompson reference is not at all concerned with the number of packing elements on packers because it's directed to a cased-hole completion. It's not directed to an open-hole completion where the number of packing elements can increase the likelihood that you'll have a good seal. The Thompson reference, and this is what the board ultimately relied on, talks about how you can have up to nine MSAF tools run in the completion, and then you'll have a number of retrievable packers positioned on each side of up to nine MSAF tools. So that sounds like a lot more than just three retrievable packers are being contemplated in the Thompson reference. Agreed, but the claim requires that each of those packers have multiple packing elements on the individual packers. So why isn't it logical to read Thompson as saying, well, okay, we're going to have a lot of retrievable packers, and here's what an example of a retrievable packer looks like. And it's right there in figure three, which shows three elements. Our response to that is figure four actually makes it ambiguous as to what Thompson is disclosing in figure three. Figure four on Appendix 1640 is described in Thompson as, the packer selected for this project was a new hydraulic set retrievable packer that had its first usage on the Joann project, and specifically cites to figure four. When you look at figure four, before Baker Hughes's expert's annotations to it, it doesn't show, at least not to the naked eye, having multiple packing elements. Baker Hughes's expert, Dr. Dinesh, who is an expert on fracking, he admittedly is not an expert on packers, and that's cited in our opening brief where he testified that he's not an expert on packers, drew some annotations pointing to what he believed were multiple packing elements on the retrievable packer on the right side of figure four. What's interesting, though, is that the left side packer on figure four, which is the permanent packer, if you look as closely as you would have to look at the right side, has the same indentations. So that's inconsistent with what's shown in figure three, which has the permanent packer looking to have a single packing element. Moreover, the Thompson reference says you can change a permanent packer into a retrievable packer simply by adding screws, shear screws, that can be sheared with enough pressure. It does not at all speak about whether there's changes in the number of packing elements or the number of seals or spacers between multiple packing elements. And so our view is that Thompson is not concerned with packing elements. It's ambiguous, especially when you look at figure four, which is the actual implementation of the packer used in this completion that was experimented, and it makes it ambiguous. And this court's case law is clear that for 102 anticipatory pieces, ambiguous references cannot be relied on for an anticipating disclosure. Moreover, this court's law is that with respect to relying on extrinsic evidence for a 102 reference, there's a certain number of, there's particular conditions where you can look at extrinsic evidence. What is whether you need extrinsic evidence to determine whether or not the prior reference is enabling? That's not what Baker Hughes relied on Dr. Dineshu for. The other one was to understand the meaning of a term or phrase in the prior reference. That's not what Dr. Dineshu was used for. And the third is whether there was some inherent characteristic. And Baker Hughes has not argued that solid body packers or these packers in the Thompson reference inherently have multiple packing elements. They went as far as to say, and the board adopted it, that it was commonly known that solid body packers or packers at this time could have multiple packing elements. But that, if that's to be given credit, that should be done under an obviousness theory, not an anticipation theory. The second point is whether Thompson is combinable with the Brown reference. The Thompson reference specifically says twice, once at appendix 1642 on the top right where it says the packers are set with no mandrel movement, and also later on it says that an important feature of the Thompson completion is that there is no mandrel movement. You think Brown is more important than Lane-Wills? So my understanding of why Baker Hughes relied on the Thompson-Brown reference was as a backstop, in case the fact finder, the board, or the Federal Circuit would find that Thompson doesn't disclose multiple packers with multiple packing elements. So they looked at Brown, which was a reference from about 20 years earlier, 1975. There is a packer in Brown, admittedly, that has multiple packing elements. But Brown specifically talks about how the mandrel has to move. The mandrel is the lever or the shaft within the packer around which components are connected and are actuated against to perform a particular function, including setting the packer. And Brown specifically talks about, this is cited in our brief in column 6, in a section entitled Setting the Packer, it talks about how you use fluid pressure to move the packing elements and the slips in order to seal the packer. So Brown specifically is dependent on mandrel movement to effectuate the seal of the packers. The reason why that came to be known as a disadvantage is because if you have to depend on actuating a particular packer to seal and you have multiple packers, that makes it difficult to set the packers at the same time, because you're dependent on the mechanical workings of each individual packer. So that's why the Thompson reference was specific, to say that, look, we don't have mandrel movement, and that's what allows us to set these packers at the same time, because you shoot the fluid down at the same pressure down all the packers and they set at the same time. One way to sort of clearly see that Brown does have mandrel movement is if you look at figures 1 and 2 of Brown, figure 1 is the packer when it's run into the well before it's set, and figure 2 is the packer once it's set. And you can see, the mandrel is reference element 11, and the packers and the slips are 13, 14, and 15, and you can see that the packing elements 13 and 14 and the slips are moved up relative to the mandrel in between figure 2 and 1. So our position there is that once skilled in the art presented with the packer of Brown, would find that it sort of teaches away from the purpose espoused in Thompson, which was to have no mandrel movement. The other issue with Brown as to why it teaches away from being used in Thompson, and this is discussed in our opening brief as well, is that Brown speaks to one packer, and the way you activate the packer is you flow a ball down to the bottom, and this is shown in figure 2 of Brown, which creates a plug, and then you pump fluid in, and it creates pressure and it actuates the packer. That type of system will not work if you have to have multiple packers, because as soon as you put a ball at the end of one of the packers, you're going to be actuating the packers at different times, you're going to need, the only way to make it work is having different sized balls. So you'll have a smaller ball go down, a slightly bigger ball, slightly bigger ball to go down, and then you'd have to hydraulically actuate them, flow those balls out, and then put in another set of different sized balls to actuate the ports. Do you want to save some time? It's about half an hour, you can continue if you wish. I'll save the remainder for about, thank you. Mr. Garrett? We're all awash in paper. Good morning, may it please the court, Mark Garrett for Appalese, Jonathan Franklin at the House Counsel for Baker Hughes. To a point that Judge Moore made earlier, he indicated that he believed you could address Lane Wells and Ellsworth as one of the three issues, but he didn't discuss it, so I'm not going to discuss it unless the court has questions about it. Just to confirm, you need it for a complete affirmance, right? That's exactly. In our view, we go through Thompson, anticipates, that gets everything but 11 of the 505 and 6 of the 634. We think the logical way to get through those is through Lane Wells for the reasons that we briefed. I want to focus on Thompson, the issue that he raised first, and the notion that it's not clear that the multiple packers that are disclosed in Thompson have multiple packing elements. If you look at its appendix 1648 is where you'll see a picture of figure 3. You go down to the portion of figure 3 that shows that retrievable packer. Underneath it, it says one REQ period per zone, in parentheses, one required per zone. The first page of the Thompson reference, which is 1639, says, I believe as you pointed out, Judge Chen, there are multiple zones. There are effectively 10 zones, which means there are 10 packers. That is the textual link, one of the textual links within the Thompson reference, showing that all of the retrievable packers that are discussed there have multiple packing elements. Because he didn't contest that figure 3 discloses, in fact, multiple packing elements. So that's the link. The other thing I would say about that is, on appendix 30, the board- So even if there is some confusion over figure 4, there's no doubt that figure 3 discloses three packing elements, and there's also no doubt, because of that link, that there are, at least in Thompson, 10 packers which have these three packing elements. That's correct, Judge. So you don't even have to worry about figure 4 and whether it might disclose, possibly, a packer without three packing elements, because figure 3, with the reference, is a single embodiment that takes care of everything. That's right, and it's cited three different times on appendix 30, so it's substantial evidence. I don't know that it's even fair for them to raise the issue about whether the multiple packers have multiple packing elements. The point I was going to quickly make is, on appendix 30, the board says, in the last sentence, patent owner does not dispute that Thompson discloses using multiple of its retrievable packers. So, I don't know that that is an issue that they can raise at this point, and they highlighted that in their reply. His arguments about Thompson-Brown, you don't get to those if you agree with us on Thompson. So, I'm happy to answer questions about them, but they were thoroughly considered by the board. The arguments are based on attorney argument. We had expert testimony with the petition, and then again, at the reply stage, we're budding those, and the board took note of that, and that formed substantial evidence for its findings. Counsel, that is indeed rapid completion. Thank you, Your Honor. Judge Chen, I'm making sure you're okay. I am fine. Okay. Keep going. Keep going. Did you want to ask him more questions? No, I did not. Mr. Koresh, he has two and a half minutes left. I'll address the point that Mr. Garrett raised. The linking language that, Judge Moore, you pointed to regarding where Thompson says up to nine MSAF tools can be used with retrievable packers on either side, reading that, it's reasonable that someone would look to figure four, which talks about the actual implementation of the retrievable packer that's used in Thompson. And I understand that Baker Hughes sort of wants to distance himself from figure four and the annotations that were made to that figure, but the board, in its final decision, repeatedly relied on figure four and the annotations. The annotations to figure four, the elements that were cited by Dr. Dineshi, none of those elements appear in Thompson, yet the board seemed to give weight to Dr. Dineshi's annotations to figure four and found him credible, even though he admitted that he's not an expert on packers. So what we would say is that you can't look at figure three without looking at figure four. Figure three is a schematic. Figure four is the actual implementation, and that figure four invites ambiguity as to whether Thompson does disclose multiple retrievable packers, each with multiple packing elements. No further questions. Thank you, Your Honor. Thank you, counsel. The case is submitted.